UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| NATHANIAL WEBBER | * | CIVIL ACTION NO.: 22-00910 |
| PLAINTIFF, | * | SECTION: T |
| | * | |
| vs. | * | JUDGE: GREG G. GUIDRY |
| | * | |
| | * | |
| LESON CHEVROLET COMPANY, INC. | * | MAGISTRATE JUDGE: |
| DEFENDANT. | * | MICHAEL B. NORTH |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER AND REASONS

The Court has before it Defendant Leson Chevrolet Company, Inc.'s ("LCC") Motion for Summary Judgment as to all claims raised against it in the above-captioned action by Plaintiff Nathanial Webber. R. Doc. 57. Webber has responded in opposition, R. Doc. 89, and LCC has filed a reply memorandum, R. Doc. 93. Having considered the parties' arguments, along with the applicable law and facts, the Court will GRANT LCC's Motion.

### I.    BACKGROUND

LCC hired Webber as a mechanic in September of 2019 and fired him on July 20, 2020, after Webber had failed to appear for work or contact LCC to explain his absence since July 2, 2020. *See* R. Doc. 57-5 at 38–40. Believing his termination to be racially discriminatory, Webber filed a charge of discrimination against LCC with the Equal Employment Opportunity Commission (EEOC). *See* R. Doc. 1 at 6. The EEOC declined to take any remedial action against LCC and thus issued Webber a notice of his right to personally sue his former employer. *See id.* Webber then filed the instant suit on April 5, 2022, asserting LCC had subjected him to racial discrimination in the workplace and terminated him in violation of Title VII of the 1964 Civil

1

Rights Act, 42 U.S.C. § 2000e, *et seq.*, as well as rising several claims under Louisiana state law based on the same alleged conduct. LCC now moves the Court to grant summary judgment in its favor as to all of Webber's claims, arguing Webber's state law claims are prescribed and that Webber cannot establish essential elements of his Title VII claims. *See* R. Doc. 57-1.

## II. APPLICABLE LAW

Summary judgment of a claim is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A court must hold "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law." *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)). When assessing whether a genuine dispute as to any material fact exists, courts "consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Accordingly, at the summary judgment stage, courts must view the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See, e.g., Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 603 (2015); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Of course, "unsupported allegations or affidavits setting forth ultimate or conclusory facts

and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation and citation removed). Although the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, if it can carry that burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 323–24. This burden is not satisfied by "metaphysical doubt as to the material facts" or only a "scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)). Summary judgment must thus be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. As the United States Supreme Court has explained, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. Courts "*do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990)) (emphasis original). Thus, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* (quoting *Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir. 1993)) (emphasis original).

### III. CLAIMS UNDER STATE LAW

The Court will first address Webber's state law claims. Webber asserts LCC's firing him constituted racial discrimination in violation of the Louisiana Employment Discrimination Law

(LEDL), specifically La. R.S. 23:332, whistleblower retaliation in violation of La. R.S. 23:967, and tortious intentional infliction of emotional distress, as well as arguing LCC is liable to Webber for the allegedly discriminatory actions of its employees during his employment. *See* R. Doc. 1 at 7–11. However, all of these claims are subject to a prescriptive period of one year beginning upon Webber's notice of his termination on July 20, 2020.[1] *See* La. Rev. Stat. § 23:303(D); *Nolan v. Jefferson Par. Hosp. Serv. Dist. No. 2*, 01-175, p. 12 (La. App. 5 Cir. 6/27/01), 790 So.2d 725, 733; La. Civ. Code art. 3492. Webber does not argue the prescriptive period for these claims began to run on any later date, nor does he contest that the instant suit was filed over a year after his termination. Nonetheless, he asserts his state law claims are not prescribed under the continuing tort doctrine and the doctrine of *contra non valentem* because he "continues to suffer from the repercussions of [LCC's] actions, well beyond the initial act of termination." R. Doc. 89 at 13.

"A prerequisite for invoking the continuing tort doctrine is the occurrence of at least one act of tortious conduct within the year immediately preceding filing suit. *Wilson v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll.*, 2014-0074 (La. App. 1 Cir. 4/8/16), 2016 WL 1394237 at *4 (citing *Bustamento v. Tucker*, 607 So. 2d 532, 539 (La. 1992)). In support of his argument that this doctrine applies, Webber asserts he "has been explicitly told by management at his current employer, 'I don't know what you have gotten yourself into but I will not be part of it[,]'" after the employer had received a subpoena from LCC in connection with the instant action; and, thus, that the consequences of LCC's allegedly discriminatory actions "extends and manifests continuously in Webber's professional and personal life post-termination."

---

[1] While the prescriptive period for claims brought under the LEDL is statutorily suspended during investigation of the claim by the EEOC, this suspension may last a maximum of six months. *See* La. R.S. 23:303(D). This results in an effective eighteen-month prescriptive period for LEDL claims where, as here, the plaintiff has sought administrative review of his claim of discrimination prior to filing suit. However, as Webber first raised the instant claims over eighteen months after his termination by LCC, application of this statutory suspension fails to render Webber's LEDL claim unprescribed.

Doc. 89 at 13–14. However, Webber provides no support for the argument that LCC's standard and typical subpoena of his current employer may be construed as tortious conduct, nor does he identify any professional detriment he has suffered as a result. Indeed, as LCC points out, Webber himself also issued a subpoena to his current employer in connection with this action. *See* R. Doc. 94 at 1–2. This further weakens Webber's assertion that LCC's subpoena constituted an additional tortious act that "affect[ed] his current job security" or caused him "emotional distress and fear of further job loss" such that it may trigger the continuing tort doctrine.

Similarly, the equitable doctrine of *contra non valentem*[2] can permit a plaintiff to pursue an otherwise prescribed claim where he "was effectually prevented from enforcing his rights for reasons external to his own will." *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994) (citing *Bouterie v. Crane*, 616 So. 2d 657, 660 (La. 1993)). Webber argues he was "continuously incapacitated from asserting his rights due to the fear and intimidation instilled by [LCC's] initial wrongful act." R. Doc. 89 at 14. However, Webber's asserted "fear" of bringing suit against LCC does not fall into any of the four categories of circumstances in which Louisiana courts generally hold *contra non valentem* to apply.[3] Moreover, if a plaintiff's assertion that he slept on his right to raise a claim due to fear of the defendant based solely on the conduct ultimately alleged[4] were sufficient to suspend prescription of that claim, the statutory time-bar on claims like Webber's

---

[2] In full, *contra non valentem agere nulla currit praescriptio*, generally translated as "prescription does not run against a party unable to act." *Wimberly*, 635 So. 2d at 211.

[3] "Generally, the doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of the following four categories: 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; 3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and 4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Wimberly*, 635 So. 2d at 211 (citing *Rajnowski v. St. Patrick's Hospital,* 564 So.2d 671, 674 (La. 1990)); *see also Marlbrough v. Cornerstone Chem. Co.*, 2024 WL 1116177, at *4–5 (E.D. La. Mar. 14, 2024) (rejecting application of *contra non valentem* where the plaintiff urged a theory that did not fall into any of those four enumerated categories).

[4] As opposed to, for example, fear of raising a claim of discrimination against a former employer based on post-termination intimidation or threats not to pursue litigation.

would be rendered essentially meaningless. Webber has thus failed to demonstrate the existence of any genuine issue of material fact regarding whether his state law claims can be saved from their facial prescription under either the continuing tort doctrine or *contra non valentem*: they are prescribed and must be dismissed.

### IV. CLAIMS UNDER TITLE VII

Turning to Webber's federal law claims, Webber asserts LCC subjected him to race-based workplace harassment, and ultimately terminated him for reporting that racial harassment, in violation of Title VII. *See* R. Doc. 1 at 3–7.

#### A. Workplace Harassment

Among other criteria, to be cognizable under Title VII discriminatory harassment "must be sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)). Title VII is not a "general civility code[,]" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), and "employers are not tasked with the duty of policing all employee behavior in and outside of the workplace." *Arredondo v. Schlumberger Ltd.*, 583 F. Supp. 3d 783, 810 (W.D. Tex. 2022), *aff'd sub nom. Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419 (5th Cir. 2023) (quoting *Chapa v. El Paso Indep. Sch. Dist.*, 2009 WL 10698730, at *7 (W.D. Tex. Sept. 22, 2009)). Even "utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Arredondo*, 81 F.4th at 433 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). Further, "second-hand harassment is less objectionable than harassment directed at the plaintiff." *Id.* (quoting *Johnson v. TCB Constr. Co.*, 334 F. App'x 666, 617 (5th Cir. 2009) (per curium)) (internal quotations

removed). Ultimately, racially harassing conduct "must be *extreme* to amount to a change in the terms and conditions of employment" actionable under Title VII. *Faragher*, 524 U.S. at 788 (emphasis added and citations omitted).

Here, the alleged racial harassment Webber asserts comprises solely personal social media posts disparaging and threatening African Americans participating in protests against racial violence that were made by a manager in LCC's sales department, Leson Rebowe. *See* R. Doc. 1 at 4; R. Doc. 57-1 at 1–2. While some courts have held that an employee who "is forced to work for, or in close proximity to, someone who is harassing her outside the workplace" may have a cognizable workplace harassment claim, Webber did not work in the same department as Rebowe, and there is no indication that Rebowe's personal social media posts were directed at Webber specifically, or that Rebowe was even aware of Webber's participation in any protests. *Arredondo*, 583 F.Supp.3d at 810 (quoting *Duggins ex rel. Duggins v. Steak 'N Shake, Inc.*, 3 F. App'x 302, 311 (6th Cir. 2001)). Webber does not make allegations of in-person or directed harassment by Rebowe of any individual, either in or outside the LCC workplace, or suggest any interaction between himself and Rebowe at all; he simply asserts he was "profoundly worried about his safety at work" because of Rebowe's personal social media posts. Although Rebowe's posts were undeniably racist and offensive, and may have caused Webber fear, they fall far short of the conduct the Fifth Circuit has previously held to be actionable discriminatory workplace harassment. *See, e.g.*, *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007); *Johnson v. PRIDE Industries, Inc.*, 7 F.4th 392, 400–04 (5th Cir. 2021). That is, Webber cannot prove at least one essential element of this claim: even if the Court were to assume Rebowe's posts can constitute racial harassment, there is no genuine issue of material fact as to whether they could be found sufficiently *extreme* harassment, of Webber, in the workplace, from which LCC was

required to protect its employee by law.

### B. Wrongful Termination

Finally, Webber asserts LCC terminated him on July 20, 2020, not because he had not appeared for work or been in contact with his employer for over two weeks, but because he had reported Rebowe's racist social media posts to his own manager. *See* R. Doc. 1 at 5. In order to prevail on this claim at trial, Webber would be required to prove his termination was in fact discriminatory using either direct or circumstantial evidence. *See, e.g.*, *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015). Webber asserts a prima facie case is here "unequivocally established by both direct and circumstantial evidence." R. Doc. 89 at 14. However, Webber's only proffered "direct" evidence that LCC's decision to fire him was motivated by his complaint about Rebowe's posts is the temporal proximity between those two events. Although the Fifth Circuit has held in the past that temporal proximity between a protected activity and an alleged retaliatory firing can be enough to establish causation under some circumstances, it has explicitly overturned that standard, stating that "the burden has now shifted to a heightened standard of 'but-for' causation, for which temporal proximity, without more, will not suffice." *Hernandez v. Metro. Transit Auth. of Harris Cnty.*, 673 F. App'x 414, 420 (5th Cir. 2016) (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)). Given Webber's extended and unannounced absence from work just prior to his termination, Webber cannot establish that "but-for" his complaint about Rebowe, LCC would not have fired him. Thus, the Court must consider whether Webber can prevail on this claim via circumstantial evidence.

This requires application of the "familiar *McDonnell–Douglas* burden-shifting framework[.]" *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346 (5th Cir. 2013) (referring to *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805 (1973)). Under this framework, the

plaintiff must first establish a prima facie case of racial discrimination by showing that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [his] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Harrison v. Brookhaven School District*, 82 F.4th 427, 429 (5th Cir. 2023) (citation omitted). If the plaintiff successfully makes this showing, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802. If it can do so, the burden shifts back to the plaintiff to show that this non-discriminatory reason is mere pretext for his employer's true discriminatory motives. *Id.* at 804.

In this case, even if the Court were to assume Webber can carry his burden to make an initial prima facie case that his termination by LCC was racially motivated, Webber has failed to show that any genuine issue of material fact exists as to whether LCC's non-discriminatory reason for firing him—his unexplained, over two-week absence from work—is mere pretext. Webber argues he can make this showing based on unsubstantiated assertions that LCC's otherwise uncontested testimony lacks credibility "when examined in the context of the broader circumstances" of this case, insisting particularly that pretext is shown by LCC's failure to investigate Webber's complaints about Rebowe or address his safety concerns. R. Doc. 89 at 18. But the uncontested, competent evidence in the record of this case demonstrates that LCC immediately investigated Rebowe's personal social media posts once they were reported, and, in fact, promptly fired Rebowe, and gave Webber two weeks off to recuperate from his anxiety. LCC only fired Webber after he came to work once following that vacation, on July 2, 2020, and, after leaving mid-day, never returned. *See* R. Doc. 57-4; R. Doc. 89-2. Webber's unsupported assertions

9

are insufficient alone to create a genuine issue of material fact as to whether LCC's statement that it fired Webber for failing to show up to work for over two weeks is mere pretext for its true discriminatory intentions. Accordingly, Webber cannot prevail on his claims brought under Title VII, no trial need be held, and the entry of summary judgment in LCC's favor is appropriate.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that LCC's Motion for Summary Judgment, R. Doc. 57, is **GRANTED**. Judgment shall be entered and this action dismissed in its entirety by separate order of the Court.

New Orleans, Louisiana, this 3rd day of September, 2024.

_____
Greg Gerard Guidry
United States District Judge